**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

WAYNE E. ALSTON,

                       Plaintiff,

vs.                                                               Case No.  3:07-cv-791-J-25JRK

FLORIDA DEPT. OF LAW
ENFORCEMENT, THE STATE OF
FLORIDA, and FLORIDA DEPT. OF
HIGHWAY SAFETY AND MOTOR
VEHICLES,

                       Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

This cause is before the Court on Plaintiff Wayne E. Alston's ("Plaintiff('s)") Third

Amended Complaint (Doc. No. 14; "Third Amended Complaint") filed November 29, 2007

and Affidavit of Indigency (Doc. No. 2; "Affidavit") filed August 24, 2007, which the Court

construes as a Motion for Leave to Proceed In Forma Pauperis.

I.     **Background / Procedural History**

Plaintiff filed his Complaint (Doc. No. 1; "Complaint") along with the Affidavit on

August 24, 2007, naming "The State of Florida" and "The First Assembly of God Church" as

Defendants and seeking $7 million in damages, along with a jury trial.  Compl. at 1.

Plaintiff's Complaint alleges "defamation" and "intentional[] inflict[ion of] emotional distress"

---

[1]       Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule
6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service
of this document.  Failure to file timely objections shall bar the party from a de novo determination by a
district judge and from attacking factual allegations on appeal.

by the Defendant State of Florida.  Id. at 1-2.  Plaintiff also suggests that Defendant First Assembly of God Church negligently maintained its parking lot, causing Plaintiff to fall and suffer serious injury.  Compl. at 3.  As the parties do not appear to be diverse and none of Plaintiff's causes of action present a federal claim, the Court entered an Order on September 7, 2007 (Doc. No. 5; "Order") taking Plaintiff's Motion under Advisement and directing him to file an amended complaint within ten days "set[ting] forth the facts on which his case is based in a few simple sentences."  Order at 3-4.  Because Plaintiff did not comply with the Court's Order to file an amended complaint, the Court entered an Order to Show Cause (Doc. No. 7) on October 1, 2007.  On that same day, Plaintiff filed a one-page, unsigned document deleting First Assembly of God Church as a Defendant and alleging the Defendant State of Florida violated Plaintiff's Fourteenth Amendment rights by placing false charges of homicide on his record (Doc. No. 8; "Amended Complaint").  Plaintiff also stated that he did not receive the Court's Order directing him to file an amended complaint until September 28, 2007.  Am. Compl. at 1.  On October 31, 2007, the Court entered an Order directing Plaintiff to file a signed amended complaint within ten days (Doc. No. 9).

Plaintiff filed a signed Supplement to his Amended Complaint (Doc. No. 10; "Supplement") on October 18, 2007, adding United States Magistrate Judge Howard T. Snyder ("Judge Snyder"), the original Magistrate Judge presiding over Plaintiff's case, as a Defendant.[2]  In the Supplement, Plaintiff alleges Judge Snyder "has violated [his First

---

[2]    This document was originally filed in a separate case.  Alston v. FDLE and Howard T. Snyder, United States Magistrate Judge, 3:07-cv-995-32JRK (M.D. Fla. Oct. 18, 2007) (Doc. No. 1).  By Order dated November 14, 2007 (Doc. No. 6), the clerk was directed to consolidate all filings into the instant case, which was pre-existing at the time the separate case was opened.  The separate case was closed on November 15, 2007, and all documents therein were consolidated into the instant case.

Amendment] right by denying [him the] right to petition the government." Supp. at 2. Additionally, Plaintiff claims Judge Snyder violated the Fourteenth Amendment by denying Plaintiff "equal protection of the law which states that the poor ha[ve] the same rights as the rich." Id. Finally, Plaintiff again states that he did not receive the Order directing him to file an amended complaint until September 28, 2007, although it was dated September 10, 2007. Supp. at 3.

Plaintiff filed a Second Amended Complaint (Doc. No. 12; "Second Amended Complaint") on November 7, 2007, dropping the State of Florida as a defendant and adding as a defendant Florida Department of Law Enforcement ("FDLE"). Plaintiff claims FDLE violated his "civil right[s]" by placing false charges of murder on his criminal background report. Second Am. Compl. at 1. Additionally, Plaintiff repeats his allegations that Judge Snyder violated Plaintiff's First and Fourteenth Amendment rights. Id. at 2. Finally, Plaintiff states that he no longer "want[s] Judge Howard T. S[ny]der handling this case[.]" Id. at 3.

Plaintiff filed a Third Amended Complaint (Doc. No. 14) on November 29, 2007, dropping Judge Snyder as a named defendant and adding the State of Florida and Florida Department of Highway Safety and Motor Vehicles ("DHSMV") as defendants. Plaintiff claims the DHSMV has been wrongfully holding his driver's license without cause since 1999. Third Am. Compl. at 2. Plaintiff apparently was involved in a car accident in 1999 and was cited for having no insurance, improper tags, and failure to yield. Id. Plaintiff claims that the insurance company for the other party to the accident placed a "hold" on his license until he paid them damages, and states that he served a year in jail for driving on a suspended license. Id.

-3-

Plaintiff also alleges that FDLE violated his "civil rights" and "right to be employed" by placing false charges of homicide on his criminal background report. Id. at 3. Plaintiff contends that FDLE engaged in "criminal libel" because the record is public. Id. at 3. Plaintiff also refers generally to a "conspiracy to cause [him] harm." Id. at 4. Finally, Plaintiff alleges "[t]he United States District Court Middle District of Florida Jacksonville Division" has violated his Eleventh Amendment "right to sue the state" and his Fourteenth Amendment right to "Equal Protection of The Laws." Id. at 4.

On November 30, 2007, Judge Snyder entered an Order of Recusal (Doc. No. 13). The matter was reassigned to the undersigned on December 3, 2007.

## II.    Standard of Review

A plaintiff may be allowed to commence a civil action in forma pauperis, i.e., without payment of court filing fees, when that plaintiff declares in an affidavit to the court that he or she "is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). The court receiving such a case, however, must dismiss a case sua sponte if, at any time, it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

With respect to failing to state a claim on which relief may be granted, the language of section 1915(e)(2)(B)(ii) mirrors the language of Federal Rule of Civil Procedure ("Rule") 12(b)(6), so courts apply the same standard in both contexts. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). A properly stated claim "may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 127

S.Ct. 1955, 1969 (2007) (citing <u>Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.</u>, 40 F.3d 247, 251 (7th Cir. 1994)).  Pleadings submitted by a <u>pro se</u> plaintiff "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).  Nevertheless, a court is under no duty to "re-write" a plaintiff's complaint to find a claim.  <u>Peterson v. Atlanta Housing Authority</u>, 998 F.2d 904, 912 (11th Cir. 1993).

**III.    Discussion**

Although Plaintiff's Affidavit demonstrates his inability to pay the Court's filing fee, Plaintiff should not be permitted leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u> because all of his Amended Complaints fail to state viable claims on which relief may be granted.[3]  <u>See</u> 28 U.S.C. § 1915(e)(2)(B)(ii).  As to the allegations against Judge Snyder, Plaintiff's claims should also be dismissed because he is seeking monetary relief against a defendant who is immune from such relief.[4]  <u>See</u> 28 U.S.C. § 1915(e)(2)(B)(iii).  The Court divides Plaintiff's allegations into three sections for purposes of review: A) allegations against the State of

---

[3]    The Court recognizes that the Third Amended Complaint is controlling.  However, as it is unclear whether Plaintiff realizes that each complaint he files essentially replaces the prior complaints, the Court analyzes whether Plaintiff has asserted viable claims in each of his filings.  <u>See</u> <u>Tannenbaum</u>, 148 F.3d at 1263.  However, Plaintiff seems to have completely abandoned his claims against Defendant First Assembly of God Church, making no reference to this Defendant in any of his amended filings.  Therefore, the Court does not analyze the original claim against this particular Defendant.

[4]    Although Judge Snyder no longer appears as a defendant in the caption to Plaintiff's Third Amended Complaint, the Court substantively analyzes whether Plaintiff has stated a claim with regard to Judge Snyder because it is unclear whether Plaintiff did this intentionally.  Plaintiff does make reference to the Court allegedly violating the Eleventh and Fourteenth Amendments in his Third Amended Complaint (<u>see</u> Third Am. Compl. at 4), but the only judicial officer presiding over Plaintiff's case through the date of Plaintiff's Third Amended Complaint was Judge Snyder.  Thus, it appears that Plaintiff has not entirely abandoned his allegations as to Judge Snyder, although they are most recently characterized as violations by the Court.

Florida and its departments; B) alleged violations of the First and Fourteenth Amendments; and C) conspiracy to cause harm.  Each are discussed in turn.[5]

### A.  Allegations Against the State of Florida and its Departments

The majority of Plaintiff's claims center around alleged actions by the State of Florida and its departments, FDLE and DHSMV.  The Eleventh Amendment to the United States Constitution bars private parties from suing states in federal courts.[6]  See U.S. Const. amend. XI; Abiff v. Slaton, 806 F. Supp. 993, 996 (N.D. Ga. 1992) (citing Carr v. City of Florence, Ala., 916 F.2d 1521, 1524 (11th Cir. 1990)).  However, there are three exceptions to the immunity provided by the Eleventh Amendment:

> First, the Eleventh amendment does not bar suit against a government official for prospective injunctive relief only.  Second, the Amendment does not bar suit when Congress, by statute, allows a state to be sued in federal court.  Finally, the Eleventh Amendment does not bar suit when the state unequivocally consents to suit in federal court.

Abiff, 806 F. Supp. at 996-97 (internal citations omitted).  Here, Plaintiff has not named a government official, nor does he seek prospective injunctive relief only; rather, Plaintiff seeks monetary damages.  Plaintiff's allegations most resemble an attempt to bring a cause of

---

[5]    Because Plaintiff claims that he did not receive the Court's Order dated September 10, 2007 until September 28, 2007, the Court will discharge its previous Order to show cause by a separate Order.

[6]    Of course, this is contrary to Plaintiff's assertion that the Jacksonville Division of the United States District Court for the Middle District of Florida has violated his constitutional right to sue the state under the Eleventh Amendment to the United States Constitution.  See Third Am. Compl. at 4. Rather than permitting suit against a state, the Eleventh Amendment prohibits this type of suit except in the limited circumstances discussed herein.

action under 42 U.S.C. § 1983.[7]   However, section 1983 "do[es] not constitute Congressional wavier of Eleventh Amendment immunity[.]" Id. (citing Quern v. Jordan, 440 U.S. 332, 339 (1979)).  For Plaintiff to bring a cause of action against the State of Florida or its departments, therefore, Florida must waive its immunity.  To a limited extent, Florida has waived sovereign immunity for both the state and its departments in tort actions.  See Fla. Stat. § 768.28; see also Tosi v. Orange County Sheriff's Office, 2005 WL 1669407, at *1 (M.D. Fla. July 8, 2005).  Nevertheless, as explained below, the Court concludes that Plaintiff has failed to plead facts consistent with his allegations against Defendants FDLE and the State of Florida, as well as his allegations against DHSMV, so it is unnecessary to determine whether this type of action is susceptible to suit under Florida's statute which waives sovereign immunity.

### 1. False Charges of Homicide on Plaintiff's Criminal Record

Plaintiff asserts that Defendants FDLE and the State of Florida violated Plaintiff's Fourteenth Amendment rights and "civil rights" by placing false charges of homicide on his record.  Am. Compl. at 1; Supp. at 1-2; Second Am. Compl. at 1; Third Am. Compl. at 3.  As a result of the alleged false charges, Plaintiff claims that he is unable to find employment, essentially equating to a denial of "the right to work."  Am. Compl. at 1; Supp. at 3-4; Second Am. Compl. at 1; Third Am. Compl. at 3.  Plaintiff also claims that the false charges amount to "criminal libel because criminal background [information] is public record[]."  Third Am.

---

[7]      Title 42, United States Code, Section 1983 provides a civil cause of action in federal court when an individual has been "depriv[ed] of any rights, privileges or immunities secured by the Constitution and laws" by a person acting under color of state law.  42 U.S.C. § 1983 (emphasis added); see also Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992).

Compl. at 3.  Plaintiff avers that there is "no arrest report or court record of such a charge."

Id.  Plaintiff finally states that he "brought this [claim] before the United States District Court

[for the] Middle District of Florida[,] Jacksonville Division [i]n May [of] 2005 and nothing was

done."  Id.

      To determine whether Plaintiff has stated a claim, the Court applies the same

standard as it would in ruling on a motion to dismiss for failure to state a claim under Rule

12(b)(6).  Mitchell,112 F.3d at 1490.  While reviewing the Complaint for whether it properly

states a claim, the Court may take judicial notice of public records.  Universal Express, Inc.,

v. S.E.C., 177 Fed. Appx. 52, 53 (11th Cir. 2006) (per curiam) (citing Stahl v. U.S. Dep't of

Agric., 327 F.3d 697, 700 (8th Cir. 2003); Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278

(11th Cir. 1999)).  Because prior complaints filed in federal court are public records, the

Court may consider them in evaluating whether Plaintiff has stated a viable claim in his

current action.  Universal Express, 177 Fed. Appx. at 53-54.  Additionally, documents

attached to the pleadings as exhibits "may be considered if [they are] central to the plaintiff's

claim and the authenticity of the document[s] is not challenged."  Adamson v. De Poorter,

2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007) (citing Horsley v. Feldt, 304 F.3d 1125,

1134 (11th Cir. 2002); Brooks v. Blue Cross & Blue Shield, 116 F.3d 1364, 1369 (11th Cir.

1997)).

      On May 26, 2005, Plaintiff filed a previous action in the United States District Court

for the Middle District of Florida, Jacksonville Division.  Alston v. Hayes, et al, 3:05-cv-

00484-20MCR (M.D. Fla. May 26, 2005) (Doc. No. 1; "2005 Complaint").   The previous

action was ultimately dismissed without prejudice on November 8, 2005 for failure to

prosecute (Doc. No. 7).  In Plaintiff's previous action, he asserted multiple causes of action which were based, in large part, on the same facts as the current action.  <u>See</u> 2005 Compl.; Doc. No. 4 ("2005 Supplement"); Doc. No. 5; ("2005 Second Supplement").  Notably, in the 2005 Second Supplement, Plaintiff attached a document entitled "Florida State Criminal Report," ("Criminal Report") which he apparently received along with a letter from a prospective employer denying him employment.[8]  2005 Second Supp. at 10-16.  The Criminal Report indicates that Plaintiff was charged with felony attempted murder and burglary of a dwelling on September 5, 2000.  <u>Id.</u>  The Criminal Report also shows that the disposition of those offenses was "held."  <u>Id.</u>  Further, there is a clause at the end of the Criminal Report that reads, in relevant part, "[w]hen explanation of a charge or disposition is needed, communicate directly with the agency that contributed the record information." <u>Id.</u> at 16.

Plaintiff also attached a local background check performed by a representative of the Nassau County Sheriff's Office indicating that Plaintiff was charged with attempted murder on September 5, 2000.  2005 Second Supp. at 17.  Additionally, Plaintiff included an arrest report dated September 5, 2000, which states that Plaintiff was charged with attempted murder and attempted burglary.  2005 Second Supp. at 18.  In the arrest report, the arresting officer states, in relevant part:

---

[8]     The Criminal Report about which Plaintiff complains apparently was not prepared by any of the named Defendants; instead, it was prepared by Edge Information Management, Inc.  <u>See</u> 2005 Second Supp. at 13.  Nevertheless, it is illustrative of the charges compiled pursuant to public information, as the report "does not guarantee the accuracy or truthfulness of the information as to the subject of the investigation, but only that it is accurately copied from public records[.]" <u>Id.</u>

> On [September 5, 2000], I responded to 14 South 10th St[reet] in reference to a domestic disturbance.  Upon my arrival, I searched the area for the Defendant, to no avail.  The Defendant knocked on the front door and demanded to see his ex-girlfriend.  The Defendant then fired a round through the glass portion of the front door, just missing the listed victim.  The Defendant then broke out the northern most front window, to gain access to the residence, and climbed inside.  The Defendant then chased the residents out of the house and fired another round through the open doorway, at the back door.  The victim and witnesses provided written statements of this incident.  The Defendant also admitted to this incident post Miranda. . . .

2005 Second Supp. at 18-19.   The arrest report also indicates that a ".22 Caliber, Remington, Single Shot Long Rifle" was taken as evidence.  Id. at 18.

Finally, Plaintiff attached two excerpts from a newspaper.  The first excerpt, dated September 6, 2000, indicates that Plaintiff "was arrested on charges of attempted murder and armed burglary of an occupied structure."  Id. at 21 (quoting Police Report, News-Leader, September 6, 2000, at 4B).  The second excerpt, dated August 1, 2001, states that Plaintiff "pleaded guilty to burglary of a dwelling" and was "sentenced to one year in the Nassau County Jail[.]"  Id. at 22 (quoting Court Report, News-Leader, August 1, 2001, at 10A).

The Court takes judicial notice of Plaintiff's suit filed in 2005, by virtue of the documents contained therein being public records.  Universal Express, 177 Fed. Appx. at 53-54.   Further, the Court has reviewed the documents attached to Plaintiff's 2005 Complaint and Supplements, as he attached them and has not contested their authenticity.[9]

---

[9]      Plaintiff contests the police officer's assertion that Plaintiff "fired another round after [he] entered the house," but does not contest the authenticity of the arrest report, nor the assertion that Plaintiff fired a "first" round.  2005 Second Supp. at 1.  Furthermore, Plaintiff does not contest that a rifle was used; rather, Plaintiff seems to think that a rifle is not a deadly weapon: "[FDLE] calls a single shot 22 caliber rifle a willful kill weapon.  If that[']s the case[,] so is a slingshot."  Id. at 6.

Adamson, 2007 WL 2900576, at *3 (citing Horsley, 304 F.3d at 1134; Brooks, 116 F.3d at 1369). The documents rebut Plaintiff's current assertion that there is no arrest report containing the disputed charges, because Plaintiff attached an arrest report to his 2005 Second Supplement. See 2005 Second Supp. at 18-19. The arrest report indicates that Plaintiff was charged with attempted murder and armed burglary, and gives the factual basis for the charges. Id. Plaintiff apparently alleges that his Criminal Report should not contain criminal charges, but only convictions.[10] See 2005 Supp. at 6 (stating "I was only convicted of burglary and I have [one] conviction of domestic battery[,] not child abuse or homicide as my record states"). Generally, criminal background checks indicate if an individual was charged with a crime, regardless of whether he/she was convicted of the charged crime. Plaintiff's Criminal Report states accurate information: he was charged with those crimes, but disposition was "held." See 2005 Second Supp. at 10-16. Therefore, because the charges on Plaintiff's Criminal Report are the result of his September 5, 2000 arrest when he was charged with attempted murder and burglary of a dwelling, and Plaintiff himself admits that he served one year in prison for the lesser offense of burglary (Am. Compl. at 1; Second Am. Compl. at 1), Plaintiff has not shown any factual inaccuracies in his Criminal Report. As such, the facts of Plaintiff's case are inconsistent with his allegations. See

---

[10]      Plaintiff seems to be confused about the meaning of the term "homicide" as used in his Criminal Report. Am. Compl. at 1 (Plaintiff states, "With homicide[,] there has to be a dead person[.] There is no[] [dead person]"). The report reads, "Charge 001–Homicide–Willful Kill Weapon–Felony Attempted Murder." Homicide is a generic term that is defined as "[t]he killing of one person by another." Black's Law Dictionary 751 (8th Ed. 2004). The act of criminal homicide is further defined as "homicide punishable by law, such as murder[.]" Id. Plaintiff was charged with attempted murder, which can be used interchangeably with attempted homicide. Crimes of attempt are not completed; therefore, contrary to Plaintiff's suggestion, there does not need to be a "dead person" for Plaintiff to be charged with attempted murder.

Twombly, 127 S.Ct. at 1969 (citing Sanjuan, 40 F.3d at 251).  Consequently, Plaintiff's claim of false homicide charges on his Criminal Report should be dismissed.

### 2.  DHSMV Wrongfully Holding Plaintiff's Driver's License

Plaintiff also states that the DHSMV has been wrongfully holding his driver's license without cause since 1999.[11]  Third Am. Compl. at 2.  A driver's license is a property interest that may not be suspended or revoked without due process.  Bell v. Burson, 402 U.S. 535, 542 (1971) (internal citations omitted).  Consistent with the notions of due process, before a state takes away an individual's driver's license, it must provide notice and an opportunity to be heard, but need not provide "a full-blown evidentiary hearing."  Plumer v. Maryland, 915 F.2d 927, 931 (4th Cir. 1990) (citing Dixon v. Love, 431 U.S. 105, 115 (1977) (holding license suspension is a "good illustration of the fact that procedural due process in the administrative setting does not always require application of the judicial model")).  Here, Plaintiff contends that he was involved in a car accident which resulted in the suspension of his license.  Third Am. Compl. at 2.  He also states that he served one year in jail for driving on a suspended license.  Id.  However, Plaintiff does not allege that the DHSMV failed to give him notice or an opportunity to be heard before suspending his license.  Plaintiff merely alleges that it is still being withheld.  Id.  This allegation does not rise to a cognizable due process claim.

---

[11]      It is unclear whether Plaintiff seeks his driver's license reinstated or monetary damages for the withholding of his driver's license.  As such, the Court analyzes whether Plaintiff has stated a claim with regard to the constitutional right of Due Process.  See U.S. Const. amend. XIV.

### B.  Alleged Violations of First and Fourteenth Amendments

Plaintiff added Judge Snyder as a defendant after Judge Snyder took Plaintiff's original complaint under advisement and provided Plaintiff with an opportunity to amend the Complaint.  See Order at 4-5; Supp. at 2.  Plaintiff alleges Judge Snyder "has violated [his First Amendment] right by denying [him the] right to petition the government."  Supp. at 2. Additionally, Plaintiff claims his Fourteenth Amendment rights were violated by the denial of "equal protection of the law[,] which states that the poor ha[ve] the same rights as the rich."[12]  Id.

The First Amendment provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I.  The First Amendment essentially limits the government from interfering with citizens' freedom of religion, speech, press, and peaceful assembly.  Plaintiff does not contend that Judge Snyder interfered with any of these rights by taking Plaintiff's Motion under advisement and warning Plaintiff that failure to amend his complaint would result in dismissal.  The ability to petition the government for redress of grievances relates back to substantive violations of the First Amendment.  Because Plaintiff has not alleged a substantive First Amendment violation, it follows that Judge Snyder did not interfere with

------

[12]     As noted previously, see supra at 5 n.4, this allegation is most recently characterized as a violation by the Court but appears in substance to be an allegation against Judge Snyder.  Third Am. Compl. at 4.

a petition for redress of grievances filed pursuant to the First Amendment. Plaintiff's First Amendment claim against Judge Snyder should be dismissed.

The Fourteenth Amendment provides in relevant part, "No state shall . . . deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. To properly allege a violation of the Equal Protection Clause, Plaintiff must assert discriminatory motive or purpose in his Complaint.[13] See Cross v. State of Ala., State Dept. of Mental Heath & Mental Retardation, 49 F.3d 1490, 1507 (11th Cir. 1995) (holding "to establish a violation of the Equal Protection Clause, appellees must prove discriminatory motive or purpose") (emphasis added)). Plaintiff claims he is being discriminated against because he is "filing [the Motion] in forma pauperis," and "the Judge[']s decision [is] based on money instead of [Plaintiff's] rights." However, as noted supra at 4, a court has a duty to dismiss a case sua sponte if, at any time, it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Judge Snyder determined that Plaintiff's original Complaint did not likely state a claim on which relief may be granted. In an abundance of caution, Judge Snyder allowed Plaintiff to amend his Complaint. Judge Snyder merely followed the law governing commencement of a civil action in forma pauperis.

---

[13]     Plaintiff cites the Fourteenth Amendment for his equal protection argument. Supp. at 2. The Fourteenth Amendment applies to the states (see U.S. Const. amend. XIV), but the federal government must also comply with equal protection requirements through the Due Process Clause of the Fifth Amendment. See U.S. Const. amend. V. The Supreme Court's equal protection analysis under the Fifth Amendment "has always been precisely the same as to equal protection claims under the Fourteenth Amendment." Weinburger v. Wiesenfeld, 420 U.S. 636, 638 n.2 (1975) (internal citations omitted).

Furthermore, "[f]ederal judges are absolutely immune from damages even if they act erroneously, corruptly, or in excess of jurisdiction." Jones v. Mossing, 791 F.2d 933 (table), slip op. at *1 (6th Cir. 1986) (upholding district court's sua sponte dismissal of civil rights complaint against an unknown federal judge for conspiring to deprive the plaintiff of equal protection under the law, and citing Stump v. Sparkman, 435 U.S. 349, 356-59 (1978)). Because Plaintiff seeks monetary damages from Judge Snyder, who is immune from such relief, Plaintiff's First and Fourteenth Amendment claims against Judge Snyder should be dismissed.  See 28 U.S.C. § 1915(e)(2)(B)(iii).

### C.  Conspiracy to Cause Harm

Plaintiff avers generally that there is a "conspiracy to cause [him] harm."  Third Am. Compl. at 4.  Conspiracy to cause harm is not a recognized civil cause of action in federal court.  Therefore, Plaintiff has not stated a valid claim with this allegation.

## IV.  Conclusion

The Court already has granted Plaintiff the opportunity to amend his original Complaint, giving Plaintiff clear instructions to state his claim in a plain and simple fashion (Doc. No. 5).  Plaintiff's several Amended Complaints and Supplements fail to show any set of facts consistent with his allegations.  See Twombly, 127 S.Ct. at 1969 (citing Sanjuan, 40 F.3d at 251).

After due consideration, it is

**RECOMMENDED**:

1.      Plaintiff's Motion for Leave to Proceed In Forma Pauperis / Affidavit of

        Indigency (Doc. No. 2) be **DENIED**.

-15-

2.     Plaintiff's Third Amended Complaint (Doc. No. 14) be **DISMISSED for failure to state a claim on which relief may be granted and seeking monetary relief against a defendant who is immune from such relief** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii).

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on February 7, 2008.

James R. Klindt

**JAMES R. KLINDT**
United States Magistrate Judge

kas

Copies to:

The Honorable Henry Lee Adams, Jr.

Pro Se parties